And we'll turn to the third case on today's calendar, United States v. Powers. This is United States v. Powers? No, I... We changed the order. The clerk's office changed the order. I did mention... My apologies. All right. United States v. Powers. Keeping us on our toes? Ms. Corbett, you're on. Good morning. My name is Molly Corbett. I'm with the Federal Public Defender Office in the Northern District of New York, and I represent the appellant, Heath Powers. The district court committed plain error, which has been conceded by the government, in accepting the guilty plea to one of the counts that was related to a description of... related to a description for an offense of production of child pornography, which, in effect, because of the facts underlying that count, was not child pornography. Counsel, this defendant got 480 months? This defendant did receive a 480-month sentence. Would he have gotten a longer sentence if he had murdered victim one instead of just taking pictures of her? Well, in addressing the substantive unreasonableness of the sentence, a life sentence was the guideline sentence, and in addition to that advisory guideline sentence, because of the interaction with the guideline 5G1.2b, the sentence was then stacked based upon counts 1 through 13. I know how he got there. I just was asking you, if he had murdered this victim instead of just taking pictures of her, is it likely that he would have gotten a longer sentence? He would have in all likelihood simply received a life sentence or the statutory maximum sentence for murdering the victim. And how old is he? He was 34 years old at the time of the offense. And he got a 40-year sentence. And he received actually a stacked sentence of 300, and it was a stacked sentence of 480 months. Right, that's 40 years? Right, are we in agreement? It's 40 years? It was a 40-year sentence. And he, in essence, because of the amount of convictions, those convictions were then stacked under the 5G1.2 application, which increased the sentence to that amount. Other than just a simple guideline sentence of life, it became life plus a term of years. So when the government argues that there's no remand necessary because his criminal history was minimal, it was a first-time offense for him, and unfortunately, because of the amount of conduct and the way that this guideline has been put together by the Sentencing Commission, he ended up with a significant life sentence because of the interaction of the specific offense characteristics, the grouping of the offenses, and the number of counts that were charged. Now, the one count that should be vacated by this court requires remand because sentencing should be conducted de novo, which this court knows is the default rule under Quintieri-Rigas, and even before that, a case that's more applicable in this situation, Adhortva. In Mr. Power's case, not only is it important because de novo review would reaffirm this default rule, but would allow the court of original jurisdiction and primary jurisdiction and discretion over sentencing to resentence him with consideration of the constellation of offenses that were actual criminal conduct and sentencing facts and a sentencing calculation that was correct. Not only that, but under the recent decisions of Molina, Martinez, and Bennett— Where are you going with this? What do you plan to try to have happen when you go back to Judge D'Agostino? Respectfully, Judge Parker, it's not just a technical error at sentencing. It actually is a plain error of the amount of counts that he was convicted in. It may appear technical because of the concurrent nature of how the judge— His exposure would be changed because the sentencing calculation would go from being the 4,440-month sentence that was calculated under the sentencing guidelines down to a 4,080-month sentence guideline calculation. And under Galvi and a number of other Supreme Court cases— You mean that's going to be a great victory for you? It's not going to be a great victory for us, but it will give the court its sentencing discretion to look at— It could have been 4,000 months, you say? It could have been 4,000 months? It could have been up to 4,440 months. And how much is that? How many years is that? Oh, I haven't calculated that out. 300? 350? Just give me an idea of how— It's over 370 years, Your Honor. 370 years. Yes. So he couldn't have gotten more time if he murdered Victim 1 than just took pictures of her? No, he could not have. He could—I'm sorry, he could have, yes. He could have gotten up to 370 years, yes. He would have received less of a sentence if he— Are we talking about real differences? The real difference— Between 370 and 40? Well, the real difference is that if this court exercises its discretion—I'm sorry, if it remands for resentencing de novo, as is the default rule in cases where the sentence is impacted, the consolation of facts and the set of offensive conduct is impacted by the dismissal of the count— Where's all this leading? What's your end game when you get back down to the district court to say she should get 39 1⁄2 months rather than— 39 1⁄2 years rather than 40 years on a pristine record? What are you doing? So the end game is for the court to exercise its discretion based on a correct application of the guidelines— You keep saying that. And to— You keep saying that. That doesn't lead anywhere. This man is going to jail for the rest of his life practically, and your argument will just, it seems to me, just get your best case is a cleaner sentencing record. Well, because of the default rule of de novo resentencing, this court could revisit its sentencing discretion under PEPR, and the post-sentencing conduct could be considered. And part of that consideration is the fact that Mr. Powers has now been in prison for a year and has received significant sex offender treatment— We know what we can do. The issue is what you're going to do. We would supplement the record under PEPR, which is the recent Supreme Court decision, which allows for post-offense conduct to be considered by the court of original sentencing discretion post-offense and allow that court to examine that information as is its jurisdiction after resentencing and determine whether or not that original sentence still is sufficient to meet the needs of the sentence as Mr. Powers stands before the court at the time of resentencing. The district court is free to ignore any additional material that you put before her, isn't that correct? That is within the court's discretion to do that. So that's not great relief. It is not great relief, but it does give the court the opportunity to consider that information as the court of primary sentencing authority, which has continually been recognized by this court. The cases that are relied on by the government, I might add, involve cases where there was absolutely no sentencing possibility of sentencing discretion. Burel and Moreno-Montenegro both involve cases where there was a merger of the offenses, so the sentence would have had no impact on the sentence, and the other was a mandatory life sentence, so there was no sentence discretion involved. You've reserved two minutes. May it please the court, Stephen Clymer for the United States. I'd like to begin by talking about the remand issue and then turn to the question of the substantive reasons. Can I talk about how you got to 480 months? Wasn't this person charged twice for the first four photos that he sent to the undercover because it was divided into separate counts? The first four counts, Your Honor, each count was for a separate image of the victim that was taken. And wasn't he charged twice for those separate images, the first four images? No, Your Honor. The counts one through four were images the defendant took on August 4th and sent to the undercover agent on August 5th. Right, so those were four photos, and group two consisted of seven other counts, which covered the four photos that he sent to the undercover agent. The next day, Your Honor, August 5th, the defendant took seven photographs of the victim. Four of those photographs he sent to the undercover on August 7th. So we have now the first eight counts were eight separate pictures of the victim taken on two separate days, all sent to the undercover, who the defendant believed was a child pornography trafficker. Counsel, would this defendant have gotten a longer term if he murdered victim one instead of taking pictures of her? Your Honor, the answer to that question is I don't know what sentence he would have gotten had he been murdered. But with all due respect, Your Honor, I take issue with the characterization that he took pictures of the victim. This was a hands-on contact offense. This defendant was touching the genital area of a seven-year-old girl. He was ejaculating on a seven-year-old girl. He was putting his penis by her mouth, and he was doing other things to her. And I'm not sure I have to go into detail. He had the record, but finally he was charged with producing and distributing pornographic pictures, right? The charge, Your Honor, was sexual exploitation for the purpose of producing child pornography. That was counts 1 through 11. And that's equal to a murder charge in terms of sentencing. Your Honor, under the sentencing guidelines, his sentencing range or his guideline sentence was a life sentence, and the court stacked the statutory maximum of a number of the sentences in order to achieve the 40. In order to achieve 480 months? Correct. And below 4,000 months? Correct. Because it was below a guideline. The guideline would have yielded 4,000 months? The way the guideline works, Your Honor, is if the statutory maximum sentence on any individual count cannot achieve the life sentence, the instructions in 5G 1.2d are for the district court to stack the sentences consecutive. So in order to the guideline sentence remained life. Defense counsel in her brief says the guideline sentence changes with the reversal of count 6. That's not true. The guideline sentence is life consistently here. The district court, under the guidelines, would have had to stack all the sentences to achieve a 4,440-month sentence after reversal 4,080. So it goes from a 370-year sentence to a 340. Now, I understand those are astronomical numbers, but the objective of the guidelines is to stack the sentences to achieve a life sentence. Here, the district court departed below the guidelines and gave Mr. Powers an opportunity to be released from prison. After 40 years. With good time credit, 34 years. Correct. And I understand that the court may be concerned about the length of the sentence. The only suggestion I would make is I am not sure this is a defendant to be concerned about with respect to the length of the sentence. This is a defendant that throughout his life has put himself in a position where he has ready access to minors. This is a defendant who, in addition to the crime here, where he betrayed the trust of a family who hired him for years as a babysitter to do these things. How would she get extra sentencing points? Because she was in his care and he had to know she was vulnerable. Right? So, I mean, that was another way to add points to the sentence. That's correct. Correct? That's correct. But in addition to that conduct, this defendant had communications over the Internet with other minor females, threatening one to try to get her. Didn't the judge say she wasn't going to rely on that in sentencing? Just the opposite, Your Honor. She did rely on that in sentencing. She talked about that. But that wasn't indictable. That was just separate information that you brought before the judge? That information was in the pre-sentence report, Your Honor. And so this defendant appears to be a predatory pedophile who takes opportunities with people who trust him. He's in positions of authority with children. He's a babysitter with children. And he abused this 7-year-old girl who was in his care in custody. As the court, I'm sure, remembers, too, the mother of this victim addressed the court at sentencing to talk about the devastation to this family this defendant caused. And I asked the court to take that into consideration. This is a very harsh sentence. I think it is wrong to consider this a substantively unreasonable sentence. This was in the district court's discretion. She believed, and she had a very careful review of the record, including aspects of the defendant's character, including the report of the psychologist who examined the defendant. She concluded that he posed an extreme risk to the community and to children. She did not want the future risk to be on children. She wanted the future risk. You want him ever out of prison. That's why she sentenced him to 40 years. That may be true, Your Honor. And I would suggest to the court that was not a substantively unreasonable thing for this district court judge to do. I believe we give the district court that discretion. I believe the judge here properly exercised her discretion to do that. As harsh as it is. Well, at another time, counsel, we'll talk about what the powers of your office were to separately indict on every photo. Your Honor, this defendant had many more images of this victim. He had over 120 images of this victim on his phones. We did not indict on every photograph. We indicted on eight photographs that this defendant chose to transmit over the Internet to somebody who we believe was a pedophile who would send him images in return, images like the ones he had of other children on his phone, of young boys or young women being anally raped by men. We didn't charge every single photo in this case. We charged three additional photos beyond the ones that he transmitted to the undercover officer. We charged one distribution count, and we charged one possession count. All right. Go on. I'd like to briefly address the remand issue. I didn't hear what you said. I'd like to address the remand issue, Your Honor. This court's cases on remand establish two principles, I believe. One is that when the court of appeals remands for resentencing, it means de novo resentencing. The Regas decision makes that very clear. The second principle, however, is this. When this court reverses on some but not all counts of conviction, it has discretion to either remand for resentencing or do a more limited remand. Was this one of the eight photos on which he was charged? Correct. One of the eight that he transmitted to the undercover. It wasn't even pornographic, it turns out? Correct, Your Honor. That's why we've conceded plain error on that count. Nice. Why not have a plenary resentencing here in accordance with the principles of Regas? What's the big deal in other words? The biggest deal, Your Honor, is one that's not mentioned in our brief, and I apologize for that. If there is a plenary resentencing here, the victim's family, under their rights as victims, will get notice. They will then have to make a decision. Do they come back to court and again face this man who abused their daughter? Well, as a practical matter, Judge D'Agostino will have certainly a reasonable memory of this earlier proceeding. She will remember, and you'll have transcripts from the earlier hearing. And the victim's family may not know that, Your Honor, and they may feel compelled because this was their daughter. They're not compelled. That's my point. I didn't say they were compelled, Your Honor. I said she may feel compelled. You can tell them you shouldn't feel compelled. Your Honor, in a situation... You already have your views, and the judge certainly understands it. It's not as though she's been terribly lenient. She understood the whole thing. She obviously understood their views and took them into account. So why would they be exposed to a reprise of this painful experience? The mere fact that they're told that this defendant will come back for resentencing will cause them to relive this. And yet the law requires that he be resentenced. Well, Your Honor, I disagree with that. And again, I have to apologize. There are a number of cases from this Court where it comes out exactly the opposite. I'll cite, for example, the Stevenson case, which is a 2001 decision. And, Judge Cabranes, you were on that panel where the Court reversed a money laundering conviction and not other convictions, sent it back for a limited remand. There's another case, Novetta, a 1991 case. I can provide, if the Court would like, I can provide citations to these decisions, either in a letter or I can provide them here. There are a number of cases where this Court has exercised its discretion not to send it back for a full resentencing, but simply to remand for the ministerial function. But this is one of the counts. Pardon me? This picture led to one of the counts that were stacked. Isn't that true? If you take this count, the count six, out of the equation, Your Honor, it does not change anything. The guidelines range is identically the same. It doesn't change any adjustment, any specific offense characteristic. Remind me what the guidelines are. The range is life, Your Honor. It was a level 43 criminal history category one, which is life. And the only thing this count does is it changes the statutory maximum sentence, which is true whenever this Court reverses one conviction. And didn't she stack the statutory maximums in order to achieve this? She didn't get close, Your Honor. The statutory maximum with this conviction in was 4,440 months. All right. Without it, it's 4080, and the sentence imposed was far below either one of those. 4,000 months. This count had no effect whatsoever. It's not a typo or a linguistic error, 4,000. I mean, I've been working with the guidelines for a very long time. I've never heard the term 4,000, any case that remotely approached 4,000 months. So is it a typo, or is it real? No, it's real, Your Honor. It is consistent with this Court's decision and the guidelines. Am I right that that's 330 years? The 370 years with all the, and with the count off, it's 340 years, Your Honor. It's what, 300 what? 370 with count six in, 340 years with count six out. Well, maybe she's making it. I'm just trying to think. Is there any predicate for this anywhere in civilized jurisprudence? Your Honor, I'm not— Anywhere. When you say—Your Honor, I'm just—when the Court says this— This sentence is 300 years. Can you point to any sentencing regime in civilized jurisprudence that ends up with a result like that? Your Honor, I cannot. If I can't, it may be a function of my ignorance about other sentencing regimes, not the fact that there hasn't been one. I will say this to the Court. As a practical matter, this is a sentence of 40 years with the possibility of going down to 34 years. And I will again reiterate, under the facts of this case, if we are to give district court judges discretion to look at facts like these, I believe this is a substantively reasonable exercise of this district court's discretion. I think this Court does great damage to the sentencing regime that we have to tell a district court, under these facts, with this type of predatory pedophile who's willing to molest a 7-year-old girl who he's babysitting for, that the judge is not permitted to do that. Let me ask you something else. Do you think this Court has given you and your office and offices like you sufficient guidance on how to handle sentences that generate the kind of numbers we've been talking about? Your Honor, I have to apologize. I'm not sure I understand the question. My office does not impose sentence. My office charges cases. My office prosecutes cases. This was a district court judge's sentence. This was not my office's sentence. We recommended a sentence. I will grant you that. The sentence we recommended... The sentences you recommend, do you feel that the structure we've provided you has been adequate? I don't believe it's inadequate, Your Honor. The government here recommended a within-guideline sentence. Thank you. Thank you. Thank you. Ms. Corbett, you've got two minutes. Just to quickly address Judge Pooler's understanding of the facts, August 4th, Mr. Powers was babysitting the children, and he babysat them into the night and then either returned or the period of time overlapped into August 5th. Now, there was a question as to the forensics of the amount of photos that were taken because of the type of social media application that was used. So the charging of these offenses, of the 11 offenses, was really questionable and was taken to the Sentencing Commission at sentencing because it was disconcerting, the amount of time that the defendant was facing for a first-time offender. Unfortunately, it was charged the way it was, and the three groups ended up interplaying with 5G 1.2 so that the offense, because of the calculation of the guidelines, a total offense level of 43, and even with a criminal history of one, with no other significant criminal history, he ended up with a life sentence, which then translated into this 4,440-year calculation, guideline calculation. That guideline calculation is now incorrect because the count related to the child, a photo of the child bare-chested, which is not child pornography, was involved in that calculation. That is part of the mosaic of facts that this Court has always been concerned with at sentencing that needs to be readdressed by the Court of Original Jurisdiction and sentencing discretion, Judge D'Agostino. And as part of that exercise of discretion, she gets to hear additional information under 3553A  Now, Ms. Corbett, you're not making an argument that this sentence is substantively unreasonable? We did have an argument about the substantive unreasonability of this sentence because of the way it was charged. We haven't heard anything from you about that this morning. All right, talk about how it was charged. What makes it unreasonable? Because all 11 of those images were charged independently and instead of as one act of distribution and as an act of distribution, so another additional count of distribution. We heard opposing views with two photo sessions.  Right. So that impacted the grouping, and then that grouping impacted and drove up the sentence. And as far as the additional count of the two distribution counts, one of the photos that was taken, and I believe it was in count 12, was also arguably part of those photo sessions. So whether it should have been charged as a distribution or that distribution was encompassed within the actual act of taking the photo, sharing it during the use of the social media, was questionably an exercise of prosecutorial discretion. I have just one more yes or no question. The decision how to charge this case is solely within the control of the U.S. Attorney, is that correct? It is correct. Thank you. Thank you. We'll reserve the decision.